**IN THE UNITED STATES DISTRICT COURT** FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**    JAN − 4 2016

JAMES N. HATTEN, CLERK
BY:. ⟨signature⟩ Deputy Clerk

|  |  |  |
|---|---|---|
| | ) | |
| RICKY R. FRANKLIN | ) | Civil Action No: |
| | ) | **1:15-CV-04396-LMM** |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **1st Amended** |
| | ) | **Complaint** |
| CITIMORTGAGE, INC | ) | |
| | ) | |

Defendant

## AMENDED COMPLAINT

Now Comes Plaintiff, Ricky R. Franklin, Pro se, who resides in Stockbridge,

Georgia, County of Henry, by and through himself and for his Verified Amended

Complaint against the Defendant, CITIMORTGAGE, INC., and Plaintiff states as

follows:

## NATURE OF THIS ACTION

1. This is an action for damages, injunctive relief, declaratory relief and laws

governed by the Quiet Title Act of 1966… O.C.G.A. 23-3-60 et seq.  Defendant

Citimortgage, Inc has violated the Fair Debt Collection Practices Act (FDCPA) 15

U.S.C. § 1692, *et seq*, and Telephone Consumer Protection Act (TCPA) Sec. 47

USC § 227(a)(iii).

2.  Upon belief and information, Plaintiff contends that many of these practices are widespread for some or all the Defendants.  Plaintiff intends to propound discovery to Defendants identifying these other individuals who have suffered similar violations.

3.  Plaintiff contends that the Defendant have violated such laws by repeatedly harassing Plaintiff in attempts to collect alleged but nonexistent debt.

## JURISDICTION & VENUE

4.  Jurisdiction of this Court is conferred by 15 U.S.C. § 1692 and 28 U.S.C. § 1331, and O.C.G.A. 23-3-60 et seq.  Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6. RICKY R. FRANKLIN, (hereinafter, "Plaintiff"), is a natural person who was at all relevant times residing in the county of Henry, state of Georgia.

7.  Defendant, CITIMORTGAGE, INC., (hereinafter CMI) is debt collector, authorized to do business in Georgia with a registered agent located at 1201 Peachtree N. E. Atlanta, GA 30361.

2

8. At all relevant times, Defendants has conducted business in Georgia, solicited business in Georgia, engaged in a persistent course of conduct in Georgia, or has derived substantial revenue from services rendered in Georgia.

9. CMI is a debt collector within the meaning of the FDCPA U.S.C. §1692a(6) as debt collection is part of its ordinary business practice and Defendant regularly collects debts on behalf of others.

## INTRODUCTION

10. In addition to damages of State and Federal law, Plaintiffs seeks a declaration that he is the exclusive titleholder to his residential property, that the deed which purported to convey the exclusive title to the property was in fact an equitable mortgage, and that all invalid assignments subsequently executed and purportedly encumbering the Plaintiffs property are void-able. In Georgia, assignments are not challengeable on its face. However, this case is, Plaintiff seeks to remove the assignments as clouds based on Georgia's Quiet title Act of 1966.

11. The Plaintiff title is derived from assignees to a portion of the original Land Grant of the Georgia Land Lotteries of 1821, giving him a "fee simple/ allodial" title . (See Exhibit A1)

## BACKGROUND

3

12. On November 13, 2015 Plaintiff brought this action to the Superior Court of Henry County. On December 17th, Defendant moved to have case heard before this Honorable Court. At the time of this filing, no proceedings or actions by the Defendant have been taken against Plaintiff in reference to the alleged debt. **Plaintiff is not in any Foreclosure actions.**

13. On November 18, 2015 Defendant was served by the Sheriff's Office of Fulton county at its registered agent's office located at 1201 Peachtree N. E. Atlanta, GA 30361. On December 1st 2015, Service of process was completed and filed into the Superior Court of Henry County State of Georgia.

## I. FDCPA FACTUAL ALLEGATIONS

14. On or about July 21, 2003, Plaintiff purchase a residential property commonly known as 708 Brambling Way, Stockbridge, GA 30281, Henry County, Georgia. Plaintiff executed a Promissory Note and Security deed payable to lender Homestar Mortgage Services, LLC, the original and secured creditor. *(See Exhibit B)* The documents did not name Defendant CMI as the beneficiary and Plaintiff never had or originated a loan with the Defendant. Plaintiff does not owe this alleged debt to CMI.

15. On May 3, 2013 Plaintiff was sent a letter by the Defendant informing him of a "default status" of a purported account. On or about June 25, 2013, the Note was

4

purportedly assigned to the Defendant CMI. This assignment was made while the alleged debt was in default. CMI qualifies as a debt collector according to 15 U.S.C. §1692a(6) as it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Additionally, under § 1692a(6), the term "debt collector" includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts".

16. In July 2014, Plaintiff inquired about the alleged debt by corresponding with the Defendant through US mail wanting to inspect the Promissory Note supposedly held by the Defendant. At the time, Plaintiff informed Defendant that he wanted to be contacted in writing.

17. On August 27, 2014 Plaintiff received a letter from CMI identifying CMI GNMA REPROCH HOLD PORT as owners of a loan. Additionally, CMI included the owners contact information and stated they were simply "servicers" for the owner. *(See Exhibit D)* Mortgage Electronic Registration Systems (MERS) list Ginnie-Mae as the Guarantor of the alleged debt and Defendant CMI as servicer. *(See Exhibit E)* At this point, Plaintiff is totally confused about the alleged debt as communication with the Defendant has been misleading and deceptive.

18.  On November 24, 2014 Plaintiff sent a Debt Validation Request to Defendant which requires collectors cease collection of debt under Fair Debt Collection Practices Act 15 U.S.C. 1692g.  CMI received the letter on 28 November 2015, according to USPS tracking number 9505511052314328531619.

19.  On 28 April and again on 5 May 2015, Defendant sent the Plaintiff requesting payment of the alleged debt.

20.  On 07 May, 2015, Plaintiff sent the Defendant a Cease and Desist letter and requested information on reporting this alleged debt to the Credit Reporting Agencies (CRA).

21.  On 18 May, 2015, Defendant replied to the Cease and Desist by informing the Plaintiff that he would no longer receive **written or verbal** collection attempts of the alleged debt.  Further, that Plaintiff would be placed on Cease and Desist list.

22.  Defendant continues to send out demand letters up until the present day.  All communications with the Defendant CMI states that "***Citimortgage is debt collector and any information obtained will be used for that purpose***"

## II. TCPA FACTUAL ALLEGATIONS

23.  Plaintiff informed Defendant CMI that he wished to be contacted only in writing in July 2014.  Defendant used a "predictive or auto dialer" to contact

Plaintiff on his cellular phone, without his consent, on 15 May, 2015, @ 1027hrs. The number used call from 904-954-1207. The message stated *"please give us a call at 855-843-2549"*

24.  Using prohibited equipment and without consent, On 21 May, 2015, Plaintiff received prerecorded voice message from on his cellular phone from Defendant CMI calling from phone number 904-954-1207. The message stated *"please give us a call at 855-843-2549"*

25.  Baffled and confused, on 28 May, 2015, Plaintiff answered the phone, and heard an artificial voice say *"Please stay on the line",* and then Plaintiff was connected to a representative, calling from phone number 904-954-1207.

26.  On 13 October, 2015, Plaintiff answered the phone, and heard an artificial voice say *"Please stay on the line",* and then Plaintiff was connected to a representative, calling from phone number 904-954-1207.

27.  On 21 October, 2015 Plaintiff answered the phone, and heard an artificial voice say *"Please stay on the line"*, and then Plaintiff was connected to a representative, calling from phone number 210-677-1346.

28.  On 2 November, 2015, Plaintiff answered the phone, and heard an artificial voice say *"Please stay on the line"*, and then Plaintiff was connected to a representative, calling from phone number 210-677-1346.

7

## III. FACTUAL ALLEGATIONS TO QUIET TITLE O.C.G.A. 23-3-60 et seq

29. Defendant has no standing in the alleged debt associated with the Plaintiff's property. Plaintiff Ricky Franklin is the rightful owner of the property commonly known as 708 Brambling Way, Stockbridge, GA 30281. Plaintiff holds a current superior title conveyed by written instrument of "Land Grant" to this property and is described as:

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 5 OF THE 12TH DISTRICT AND LAND LOT 12 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT 162, AVIAN FOREST SUBDIVIVISION, PHASE III, SECTION A, A PER PLAT RECORDED IN PLAT BOOK 35, PAGE 243-245, HENRY COUNTY RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.**

30. Plaintiff filed an unrecorded deed from 1821 conveyed from Henry Ezell...**This Land Grant is conveyed and assigns forever** legal title to the Plaintiff. (See Exhibit A-6) The Fee-simple title was obtained by way of Plaintiff as Assignee to a said portion of Land Grant. Its origin is derived from the State Archives of the State of Georgia; filed in the Superior Court of Henry County May 29, 2014. Deed Book 13587, Page 216-227 (Exhibit A1). As an assignee, Plaintiff does not lose any of the original Land Grant rights given to the original owner. *See*...Wilcox v Jackson 13 Peter (US) 498; *The Grant alone passes land from the United States of America to the State of Georgia to the Grantee and nothing passes a perfect title to public lands but a grant/patent.* See Also...State v. Crawford,

8

441p2d 586,590 (Ariz, app. 1968); "*A grant/patent to land is the highest evidence of title and may not be collaterally attacked*

31.  Plaintiff challenges and seeks to remove the cloud on his title held by Defendant CMI. *(See Exhibit C)* The assignment is invalid, voidable, and constitutes a cloud recorded against Plaintiff's title. See… Johnson v Bank Of America,( July 14, 2015, A15A0688, Ga Ct Appeals) *Citing…A Plaintiff in a quiet title action need not be a party to possible clouds in order bring a quiet title action in an attempt to remove those clouds.  In Johnson, the Court further stated…that although Johnson was not a party to the assignments that he challenges does not destroy his standing to assert that those assignments are clouds upon his title.*

32.  Attached to this Complaint is a certified plat and deed.  See (**Exhibit A-11/12**)

## COUNT I
## VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, ET seq

33.  The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

34.  The Defendant is a debt collector within the meaning of the FDCPA, 15 U.S.C. § 1692a (6) as debt collection is part of its ordinary business practice and Defendant regularly collects debts on behalf of others.

9

35. Defendant continues to send harassing letters after receipt of the Plaintiff's letter to cease and desist. Defendant knew or should have known that the letters and phone calls made were inconvenient to the consumer. Such communications are prohibited by 15 U.S.C. § 1692c(c).

36. The Defendant conduct violated 15 U.S.C. § 1692e (10) in that Defendants used false and deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

37. The Defendant conduct violated 15 U.S.C. § 1692f in that Defendant used unfair or unconscionable means to collect or attempt to collect the alleged debt.

38. The Defendant conduct violated 15 U.S.C. § 1692g in that Defendants failed to validate the alleged debt.

## COUNT II
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. §227, et seq

39. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

40. Defendant has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A) by using an automatic telephone dialing system to call the Plaintiff's number which is assigned to a cellular telephone service.

41. At all times mentioned Defendants made at least six (6) calls to Plaintiff on his cellular telephone using an ATDS or predictive dialer and/or by using a prerecorded or artificial voice.

42. Plaintiff did not provide his consent to be contacted on his cellular telephone and in fact instructed Defendants to stop all calls to him and cease calling his cellular telephone.

43. The telephone number called by Defendant was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

44. The calls from Defendant to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

45. As a result of each call made in knowing and/or willful violation of the TCPA, Plaintiff is entitled to an award of treble damages in an amount up to $1,500.00 pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

46. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

## **PRAYER FOR RELIEF**

a) Declaration declaring Plaintiff is an exclusive titleholder to his residential property and are the assignees to a said portion of the Land Grant;

11

b) Injunctive Relief barring Defendant from bringing future actions against Plaintiffs;

c) Declare against anyone and everyone, and thus "QUIET" any challenges or claims to the title according to O.C.G.A 23-3-60 et seq;

d) Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692 *et seq* against Defendant;

e) Punitive and Compensatory damages from the Defendant that includes severe emotional distress, mental anguish, depression, and loss of enjoyment of life, and anxiety suffered as a result of the intentional, deceptive, reckless, and/or negligent behavior pursuant the 15 U.S.C. §1692 *et seq*. Judgement for these damages to be determined at trial;

f) As a result of Defendant CMI willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks statutory damages of $1500.00 for each and every call that violated the TCPA;

g) This Court order the Defendant to waive all default interest, late penalties and other such charges of the alleged debt until the date of Defendants standing in this matter is resolved;

h) Reimbursement of all payments made to Defendant CMI and all fees in amount of $120,000.00;

i) Injunctive Relief from alleged debt;

12

j) A trial by jury on all issues so triable;

k) Such other and further relief as may be just and proper.


Pursuant to Title 28 USC 1746(1) and executed "without the United States," I affirm under penalty or perjury under the laws of the USA that the foregoing is true and correct to the best of my belief and informed knowledge".


Respectfully submitted,

Ricky R. Franklin
708 Brambling Way
Stockbridge, GA 30281
678-650-3733
rrfrank12@hotmail.com

The undersigned hereby certifies that a copy of the foregoing was sent via mail on

December 30th, 2015to Defendant's Counsel listed below:

**BALLARD SPAHR LLP**

**STEFANIE H. JACKMAN**

**NATASHA ALLADINA**

**SARAH T. REISE**

**CITIMORTAGE INC**

**999 Peachtree Street, N.E.**

**Atlanta, Georgia 30309**

**COUNSEL FOR DEFENDANT Citimortgage, Inc.**

Plaintiff, Pro-Se

Ricky R. Franklin

708 Brambling Way

Stockbridge, GA 30281

14

# EXHIBIT A

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO:

Ricky R. Franklin
708 Brambling Way
Stockbridge, GA 30281



Doc ID: 016771190012 Type: MISC
Recorded: 05/29/2014 at 11:33:13 AM
Fee Amt: $30.00 Page 1 of 12
Henry, GA Clerk of Superior Court
Barbara Harrison Clerk of Court
BK 13587 PG 216-227

# DECLARATION OF ASSIGNEE'S UPDATE OF LAND GRANT

TO WHOMEVER IT MAY CONCERN:

This DECLARATION is directed to be attached to all deeds and/or conveyances in the name of the parties above shown as requesting recording of this document, in a manner known a nunc pro tunc (as it should have been from the beginning).

KNOWN YE ALL MEN THAT BY THESE PRESENTS: I **Ricky R. Franklin** DO SEVERALLY CERTIFY AND DECLARE THAT I BRING UP THE LAND GRANT IN MY NAME. THE ASSIGNEE TO THE LAND GRANT THAT IS FILED AND KNOWN AS, THE 4TH GEORGIA LAND LOTTERIES OF 1821: REGISTERED AS 1821 LAND LOTTERY HENRY COUNTY REGISTER OF GRANTS

SAID COPY OF WHICH IS ATTACHED HERETO.

1. I, FURTHER CERTIFY THAT I AM THE ASSIGNEE TO A PORTION OF SAID GRANT WHICH IS LEGALLY DESCRIBED AS ATTACHED HERETO AND MADE PART HERETO AND MADE APART HERETO AND MADE APART HEREOF BEING THE ONLY WAY A PERFECT, PARAMOUNT, AND ALLODIAL TITLE CAN BE HAD IN My NAME, AND PARTICULARLY THE FOLLOWING DESCRIBED LAND SO SOUGHT TO BE GRANTED:

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 5 OF THE 12TH DISTRICT AND LAND LOT 12 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT 162, AVIAN FOREST SUBDIVIVISION, PHASE III, SECTION A, A PER PLAT RECORDED IN PLAT BOOK 35, PAGE 243-245, HENRY COUNTY RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.**

1

IF THIS DECLARATION OF LAND GRANT IS NOT CHALLENGED BY SOMEONE IN A COURT OF LAW WITHIN SIXTY (60) DAYS FROM THE DATE OF FILING, THE ABOVE DESCRIBED PROPERTY SHALL BECOME MINE AS ALLODIAL FREEHOLD, AND THEN THIS LAND GRANT SHALL BE UPDATED IN MY NAME, SUBJECT TO THE LIMITATION STATED HEREIN.

2. NOTICE OF PRE-EMPTIVE RIGHT. PURSUANT TO THE DECLARATION OF INDEPENDENCE(1776), THE TREATY OF PEACE WITH GREAT BRITAIN (8STAT) KNOWN AS THE TREATY OF PARIS [1793] AN ACT OF CONGRESS [3STAT.566, APRIL 24, 1824], THE OREGON TREATY [9STAT.869, JUNE 15, 1846], THE HOMESTEAD ACT [12STAT.392, 1862] AND 43 USC SECTIONS 57, 59, AND 83; THE RECEIPIENT HEREOF IS MANDATED BY ART. VI SECTIONS 1, 2, AND 3; ART. IV SECTIONS 1 CL. 1&2; SECTION 2 CL. 1 8t 2; SECTION 4; THE 4TH, 7TH, 9TH, AND 10TH AMENDMENTS [U.S. CONSTITUTION, 1781-91] TO ACKNOWLEDGE ASSIGNEE'S UPDATE OF GRANT OR PATENT PROSECUTED BY AUTHORITY OF ART. III SECTION 2 CL. 1&2 ENFORCED BY ORIGINAL/EXCLUSIVE JURISDICTION THEREUNDER AND IT IS THE ONLY WAY TO PERFECT TITLE CAN BE HAD IN MY NAME, WILCOX vs JACKSON, 13 PET. (U.S.) 498, 101. ED 264; ALL QUESTIONS OF FACT DECIDED BY THE GENERAL LAND OFFICE ARE BINDING EVERYWHERE. AND INJUNCTIONS AND MANDAMUS PROCEEDING WILL NOT LIE AGAINST IT, LITCHFIELD vs. THE REGISTER, 9 WALL (U.S.) 575, 19L. ED. 681. THIS DOCUMENT IS INSTRUCTED TO BE ATTACHED TO ALL DEEDS AND/OR CONVEYANCE IN THE NAME OF THE ABOVE PARTY.

3. LAWS OF THE LAND; THIS GRANT IS PROTECTED THROUGH THE CREATION ON THE LAWS OF THE STATE OF GEORGIA OF THE GENERAL ASSEMBLY OF DEC. 1837; THE CONSTITUTION OF THE UNITED STATES; THE CONSTITUION OF THE STATE OF GEORGIA AS AMENDED; HIS EXCELLENCY JOHN CLARK GOVERNOR AND COMMANDER IN CHIEF OF THE ARMY AND NAVY OF THIS STATE, AND OF THE MILITIA THEREOF; AN ACT TO MAKE DISTRIBUTION OF THE LATE CESSION OF LANDS, OBTAINED FROM THE CREEK NATION BY THE UNITED STATES COMMISSIONERS, IN A TREATY ENTERED INTO AT OR NEAR FORT WILKINSON, ON THE 16TH DAY OF JUNE, 1802-APPROVED MAY 11, 1803. VOL II. 100.; AN ACT TO DISPOSE OF AND DISTRIBUTE THE LANDS LATELY ACQUIRED BY THE UNITED STATES FOR THE USE OF GEORGIA, OF THE CREEK NATION OF INDIANS, BY A TREATY MADE AND CONCLUDED AT THE INDIAN SPRINGS, ON THE 8TH DAY OF JANUARY, 1821; AND TO ADD THE RESERVE AT FORT HAWKINS TO THE COUNTY OF JONES APPROVED MAY 15, 1821. VOL IV. 246; THIS EMBRACES THE TERRITORY BETWEEN THE OCMULGEE AND FLINT, ABOVE IRWIN AND BELOW COBB COUNTY.

2

4. Legal description of HENRY COUNTY

ALL THAT PART OF SAID TERRITORY WHICH LIES EAST OF THE LAST-MENTIONED LINE, AND A LINE COMMENCING AT THE CORNER OF MONROE COUNTY TO THE CHATTAHOOHEE, SHALL FORM ONE OTHER COUNTY TO BE CALLED HENRY.

5. DISCLAIMER; NO CLAIM IS MADE HEREIN THAT I HAVE BEEN ASSIGNED THE ENTIRE TRACT OF LAND AS DESCRIBED IN ORIGINAL GRANT, MY ASSIGNMENT IS INCLUSIVE ONLY TO THE ATTACHED OR ABOVE LISTED LEGAL DESCRIPTION. THE FILING OF THIS DECLARATION OF LAND GRANT SHALL NOT DENY OR INFRINGE ON ANY RIGHT, PRIVILEGE OR IMMUNITY OR ANY OTHER ASSIGNEE TO ANY OTHER PORTION OF LAND COVERED IN THE ABOVE DESCRIBED GRANT.


MEMORANDUM OF LAW ON RIGHTS, PRIVILEGES AND IMMUNITIES

ALLODIAL, FREE; NOT HOLDEN OR ANY LORD OR SUPERIOR; OWNED WITHOUT OBLIGATION OF VASSALAGE OR FEALTY: THE OPPOSITE OF FEUDAL. Baker V. Dayton, 28 Wis. 384; Wallace V. Harmstad, 44 Pa. 499: (Black's Law Dictionary, 4th Edition).

ALLODIUM. LAND HELD ABSOLUTELY IN ONE'S OWN

RIGHT, AND NOT OF ANY SUPERIOR; LAND NOT SUBJECT TO

THE GRANT ALONE PASSES LAND FROM the united States of America TO THE STATE OF GEORGIA TO THE GRANTEE AND NOTHING PASSES A PERFECT TITLE TO PUBLIC LANDS BUT A GRANT/PATENT. Wilcox v. Jackson, 13 Peter (US) 498;

AS ASSIGNEE, WHETHER HE BE THE FIRST, SECOND OR THIRD PARTY TO WHOM THE TITLE IS CONVEYED SHALL LOSE NONE OF THE ORIGINAL RIGHTS PRIVILEGES OR IMMUNITIES OF THE ORIGINAL GRANTEE OF LAND GRANT/PATENT. The U.S. Constitution STATES IN ARTICLE I, SECTION 10, CLAUSE 1, "No state shall ... impair the obligations of contract.";

IMMUNITY FROM COLLATERAL ATTACK: Collins v. Bartlett, 44Cal 371: Webber v. Pere Marquete Boom Co., 62 Mich 626, 30 NW 469: Surgest v. Dow, 24 Miss 118L Pittsmont: Copper Co. v. Vanina, 71 Mont 44 Pac 461 Green v. Barker, 47 Neb 934 66 NW 1032.

3

Acknowledgment/Jurat

DATE: _May 26_____ 2014 _____

Signature: Ricky R. Franklin

Witness _____

STATE OF GEORGIA
COUNTY OF HENRY

On this _20_ day of __May_____, _2014___ before me,
_Tatiana Fritzgerald_, personally appeared Ricky R. Franklin, know to me (or satisfactorily proven) to the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same as Homestead for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal

_____
Notary Public

_____
Title (and Rank)
My commission expires _02/06/2019_

| Documents | Grantee Assignee Notice of update of Land Grant, Stapled 4 pages |
|---|---|
| Exhibit A | Original Land Grant from Georgia Division of Archives and History, 4 pages, |
| Exhibit B | Certified Plat, 1 Page, |
| Exhibit C | Certified Warranty Deed |
| Exhibit D | Homestead declaration, 2 pages. |

4

# STATE OF GEORGIA



## The Georgia Archives, University System of Georgia

I, Christopher M. Davidson, J.D., Director of The Georgia Archives, do hereby certify that the one page document hereto attached and made part of this certificate is a true and correct copy of page 1 of 1821 Land Lottery Henry County Register of Grants, showing Henry County, District 12, Land Lot 5, and I further certify that the described grant book is on file and of official record in the Archives of the State of Georgia.

IN TESTIMONY WHEREOF, I have set my hand and affixed the Official Seal of the State of Georgia this twenty-ninth day of April, 2014

Director, The Georgia Archives



5

*John Clark* **Governor and**
**Commander in Chief of the Army and Navy** *of this State and*
*of the Militia thereof.*

TO ALL TO WHOM THESE PRESENTS SHALL COME, *GREETING*:

KNOW YE, That in pursuance of an act of the General Assem-
bly passed the 15th of May, 1821, for making distribution of the land lately acquired of
the Creek Nation of Indians, and forming the counties of Dooly, Houston, Monroe, Fay-
ette and Henry, in this State, I HAVE GIVEN AND GRANTED, and by these pre-
sents, in the name and behalf of this State, DO GIVE AND GRANT, unto *Henry*
*G. Ozell. of Whites District Jasper*
*County his ———— " "*

heirs and assigns forever, all that Tract or Lot of Land, containing two hundred two and
a half acres, situate, lying and being in the *Twelfth ————*
district of *Henry* ‹ county, in the said State, which said
Tract or Lot of Land is known and distinguished in the plan of said district by the Num-
ber *five* having such shape,
form and marks as appear by a plat of the same hereunto annexed : To have and to hold
the said tract or lot of land, together with all and singular the rights, members and ap-
purtenances thereof, whatsoever, unto the said *Henry G Ozell his*
‹ heirs and assigns ; to *his* ‹ and their proper use, benefit
and behoof forever in fee simple.

GIVEN under my hand and the Great Seal of the State, this *Eighth.*
day of *December* ‹ in the year of our Lord eighteen hundred and
*twenty one,* and of the forty *Sixth* year of American
Independence.

Signed by His Excellency the Governor, the }
8 day of *December* 1921 } *John Clark*

*John Burch* S. E. D.

Registered the *Twenty third* day of *March* 1822

*6*

# STATE OF GEORGIA



The Georgia Archives, University System of Georgia

I, Christopher M. Davidson, J.D., Director of The Georgia Archives,
do hereby certify that the one page document hereto attached and
made part of this certificate is a true and correct copy of page 113
of 1821 Land Lottery Henry County Register of Grants, showing
Henry County, District 6, Land Lot 12, and I further certify that
the described grant book is on file and of official record in the
Archives of the State of Georgia.

IN TESTIMONY WHEREOF, I have set my hand and affixed the
Official Seal of the State of Georgia this twenty-ninth day of April, 2014

*Christopher M. Davidson*

Director, The Georgia Archives



... ... ...

... in pursuance of ... ... ... ... ... ... of May, 1821, for ... ... ... ... ... ... of the ... Nation of ... and forming the ... ... ... ... Fayette ... Henry, in this State, I HAVE GIVEN AND ... ... and by these presents, in the name and behalf of this State, DO GIVE AND GRANT, unto *Sands Standley of Padgett's district Toothall County* has

heirs and assigns forever, all that Tract or Lot of Land, containing two hundred two and a half acres, situate, lying and being in the *Sixth* district of *Henry* ... county, in the said ... ... ... Tract or Lot of Land is known and distinguished in the plan of said district by the number *Twelve* ... having ... ... form and marks as appear by a plat of the same hereunto annexed. To have and to hold the said tract or lot of land, together with all and singular the ... ... ... appurtenances thereof, whatsoever, unto the said *Sands Standley* *his* heirs and assigns; to *his* and their proper use benefit and behoof forever in fee simple.

GIVEN under my hand and the Great Seal of the State, this *twenty second* day of *November* in the year of our Lord eighteen hundred and *twenty three* and of the forty *Eighth* year of American Independence.

*G M Troup*

Signed by His Excellency the Governor, the 22 day of *November* 1823

*Mirabeau B Lamar* S. E. D.

Registered the 22 day of *November* 1823.

8

When Recorded, Return to:

Ricky R. Franklin
708 Brambling Way
Stockbridge, GA 30281

# DECLARATION OF HOMESTEAD

1. I, Ricky R. Franklin, DO HEREBY DELCARE:

2. THAT MY MAILING ADDRESS FOR MY HOMESTEAD IS:
   708 Brambling Way
   Stockbridge, GA 30281

3. I am now residing on the Land and premises located in the city of Stockbridge, County of Henry, State of Georgia, known and legally described as:

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 5 OF THE 12TH DISTRICT AND LAND LOT 12 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT 162, AVIAN FOREST SUBDIVIVISION, PHASE III, SECTION A, A PER PLAT RECORDED IN PLAT BOOK 35, PAGE 243-245, HENRY COUNTY RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.**

4. I am DECLARED HOMESTEAD HEAD OF HOUSEHOLD OWNER OF THE DECLARED HOMESTEAD.

5. NO FORMER DECLARATION OF HOMESTEAD HAS BEEN MADE BY ME EXCEPT AS HAS BEEN ABANDONED.

DATE: 25 MAY                    2014 _____

Signature: Ricky R. Franklin

STATE OF GEORGIA
COUNTY OF HENRY

1

I _Tatiana Fritgerald_, being duly sworn on oath, deposes and says: that as signer to this DECLARATION OF HOMESTEAD, all statements made herein are true and correct to the best of my knowledge and belief.

On this _2.9_ day of _May_ _, 2014_ before me,

_Tatiana Fritgerald_, personally appeared Ricky R. Franklin, know to me (or satisfactorily proven) to the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same as Homestead for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal

_Tatiana Fitzgerald_
Notary Public

_Perkins_

Title (and Rank)
My commission expires _02/06/2016_

**t 10**

# PLAT BOOK 35 PAGE 244



FINAL PLAT OF:
AVIAN FOREST
PHASE III
SECTION A
SHEET 2 OF 3

GEORGIA, HENRY COUNTY
I CERTIFY THAT THE FOREGOING
IS A TRUE AND EXACT COPY OF THE
ORIGINAL WHICH APPEARS OF RECORD
IN THIS OFFICE. BK 35
PG 244
IN WITNESS WHEREOF I HAVE
AFFIXED MY SEAL AND SIGNATURE
THIS 21 DAY OF ____
BARBARA K. HARRISON - HENRY SUPERIOR COURT

U63U5
00058

BOOK 6306 PAGE 98

GEORGIA, HENRY COUNTY
I CERTIFY THAT THE FOREGOING
IS A TRUE AND EXACT COPY OF THE
ORIGINAL WHICH APPEARS OF RECORD
IN THIS OFFICE, BK   6306
PG        98-99
IN WITNESS WHEREOF I HAVE
THIS  21   DAY OF   April  2014
AFFIXED MY SEAL AND SIGNATURE

BARBARA A. HARRISON - HENRY SUPERIOR COURT

```
DOC#  047490
FILED  IN  OFFICE
08/28/2003
02:55:00PM
BK:06306  PG:0098
JUDITH  A.  LEWIS
CLERK  OF
SUPERIOR  COURT
HENRY  COUNTY,  GA
```

RETURN DOCUMENT TO:
THE LAW OFFICES OF SAM MAGUIRE, JR., P.C.
4840 ROSWELL RD., BLDG. E-400
ROSWELL, GEORGIA  30342
(404)257-8885
FILE #0327930

**WARRANTY DEED**

REAL ESTATE TRANSFER TAX
HENRY COUNTY
SUPERIOR COURT

STATE OF GEORGIA
COUNTY OF FULTON

AUG 2 8 2003

PAID $        142.60

CLERK OF SUPERIOR COURT

This Indenture made this 21st day of July, in the year 2003, between D. R. HORTON, INC. -
TORREY, A DELAWARE CORPORATION, of the County of FULTON, State of Georgia, as party or parties of the
first part, hereinunder called Grantor, and RICKY R. FRANKLIN, as party or parties of the second part, hereinafter
called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the
context requires or permits).

W I T N E S S E T H that: Grantor, for and in consideration of the sum of TEN AND 00/100'S
($10.00) Dollars and other good and valuable consideration in hand paid at and before the sealing and delivery of
these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and
confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 5 OF THE 12TH
DISTRICT AND LAND LOT 12 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT
162, AVIAN FOREST SUBDIVISION, PHASE III, SECTION A, AS PER PLAT RECORDED IN PLAT
BOOK 35, PAGE 243-245, HENRY COUNTY RECORDS, WHICH PLAT IS INCORPORATED
HEREIN AND MADE A PART HEREOF BY REFERENCE.

This Deed is given subject to all easements and restrictions of record, if any.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and
appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and
behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto
the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, Grantor has hereunto set grantor's hand and seal this day and year first above written.

Signed, sealed and delivered in the presence of:

D. R. HORTON, INC. - TORREY,
A DELAWARE CORPORATION

Witness

By.                                    (Seal)
                    ASST. SECRETARY

Notary Public

MERCER
NOTARY
EXPIRES
GEORGIA
SEPT 9 2005
PUBLIC
COBB COUNTY

By.                                    (Seal)

(Corporate Seal)

# EXHIBIT B

BOOK **6306** PAGE **99**

```
DOC# 047491
FILED IN OFFICE
08/28/2003
02:25:48PM
BK:06306 PG:0099-119
JUDITH A. LEWIS
CLERK OF
SUPERIOR COURT
HENRY COUNTY, GA
```

THE LAW OFFICES OF SAM MAGUIRE, JR., P.C.
4340 ROSWELL ROAD, BLDG. E-400
ATLANTA, GA 30342
404-257-9888 / FACSIMILE: 404-257-9771

Return To:
Home Star Mortgage Services,
LLC
W115 Century Road, Paramus,
NEW JERSEY 07652

Prepared By:

Mike McKellan
W115 Century Road, Paramus,
NEW JERSEY 07652

———————— [Space Above This Line For Recording Data] ————————

## SECURITY DEED

MIN 100135813040030571

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

*DEFINITIONS*

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 21, 2003**
together with all Riders to this document.
**(B) "Borrower"** is **Ricky R. Franklin, a single man, Sole Ownership**

Borrower is the grantor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

1304003057

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011  1/01

**-6B(GA)** (0005).01
Page 1 of 14                Initials: _____

VMP MORTGAGE FORMS - (800)521-7291

**GEORGIA INTANGIBLE TAX**
HENRY COUNTY
SUPERIOR COURT

AUG 1 9 2003

PAID $  436.50

CLERK OF SUPERIOR COURT

BOOK 6306 PAGE 100

(D) "Lender" is **Home Star Mortgage Services, LLC**

Lender is a **Limited Liability Corporation**
organized and existing under the laws of **DELAWARE**
Lender's address is **W115 Century Road Paramus, NEW JERSEY 07652**

(E) "Note" means the promissory note signed by Borrower and dated **July 21, 2003**
The Note states that Borrower owes Lender **One Hundred Forty Five Thousand Three
Hundred Seventy Seven and 00/100**                                                                    Dollars
(U.S. $      **145,377.00**    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **August 01, 2033**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☑ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☑ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☒ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

**Waiver of Borrowers Rights**
Closing Atty's Affidavit

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

1304003057

-6B(GA) (0005).01                          Page 2 of 14                     Initials: _____     Form 3011 1/01

BOOK 6306 PAGE 101

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the **County**

|  | of |  | **Henry** | : |
| [Type of Recording Jurisdiction] | | | [Name of Recording Jurisdiction] | |

**See Attached Exhibit "A"**

Parcel ID Number:                                              which currently has the address of
**708 Brambling Way**                                                                          [Street]
**Stockbridge**                                    [City] , Georgia **30281**          [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
1304003057

⊕ **-6B(GA)** (0005).01                         Page 3 of 14                  Initials: *AP7*          **Form 3011 1/01**

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

1304003057

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

1304003057

-6B(GA) (0005).01                    Page 5 of 14                    Initials: _____                    Form 3011 1/01

BOOK **6306** PAGE **104**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

1304003057

-6B(GA) (0005).01                    Page 6 of 14                    Initials: _____                    Form 3011  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

1304003057

-6B(GA) (0005).01                    Page 7 of 14                    Initials: _____                    Form 3011 1/01

BOOK **6306** PAGE **106**

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

BOOK **6306** PAGE **107**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

1304003057

-6B(GA) (0005).01                    Page 9 of 14          Initials: _____          Form 3011  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

1304003057

-6B(GA) (0005).01                            Page 10 of 14                    Initials: _____                    Form 3011  1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

1304003057

-6B(GA) (0005).01                    Page 11 of 14                    Initials: ___                    Form 3011 1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

1304003057

-6B(GA) (0005).01                    Page 12 of 14                    Initials: _____                    Form 3011  1/01

BOOK **6306** PAGE **111**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

1304003057

BOOK **6306** PAGE **112**

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)            _____ (Seal)
Ricky R. Franklin        -Borrower                                -Borrower


_____ (Seal)            _____ (Seal)
                        -Borrower                                -Borrower


_____ (Seal)            _____ (Seal)
                        -Borrower                                -Borrower


_____ (Seal)            _____ (Seal)
                        -Borrower                                -Borrower


**STATE OF GEORGIA,**                                      **County ss:**
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,                                          County
State of Georgia

1304003057

-6B(GA) (0003).01                        Page 14 of 14                    Form 3011  1/01

BOOK 6306 PAGE 113

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this **21st**      day of **July, 2003**                , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to **Homestar Mortgage Services, LLC**

(herein "Lender") and covering the Property described in the Security Instrument and located at
**708 Brambling Way, Stockbridge, GEORGIA 30281 Henry**

[Property Address]

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

**1304003057**

**MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER**

**-538R (9904).01**        **3/99**
Page 1 of 3          Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

1304003057

-538R (9904).01                    Page 2 of 3                    Initials: _____

BOOK **6306** PAGE **115**

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

_____
Ricky R. Franklin          -Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

_____
-Borrower

1304003057

-538R (9904).01        Page 3 of 3

# · PLANNED UNIT DEVELOPMENT RIDER

**THIS PLANNED UNIT DEVELOPMENT RIDER** is made this **21st** day of **July, 2003,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **HOME STAR MORTGAGE SERVICES, LLC** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **708 BRAMBLING WAY, STOCKBRIDGE, GA 30281**

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities as described in **RESTRICTIVE COVENANTS OF RECORD** (the "Declaration"). The Property is a part of a planned unit development known as  (the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and

(ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay

BOOK **6306** PAGE **117**

them.  Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and provisions contained in this **PUD Rider**.

_____(Seal)
**RICKY R. FRANKLIN** -Borrower

_____(Seal)
-Borrower

EXHIBIT "A"        BOOK 6306 PAGE 118

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 5 OF THE 12TH
DISTRICT AND LAND LOT 12 OF THE 6TH DISTRICT, HENRY COUNTY, GEORGIA, BEING LOT
162, AVIAN FOREST SUBDIVISION, PHASE III, SECTION A, AS PER PLAT RECORDED IN PLAT
BOOK 35, PAGE 243-245, HENRY COUNTY RECORDS, WHICH PLAT IS INCORPORATED
HEREIN AND MADE A PART HEREOF BY REFERENCE.

GEORGIA                                  LOAN #: 1304003057

GRANTOR:    RICKY R. FRANKLIN

LENDER:     HOME STAR MORTGAGE SERVICES, LLC                BOOK 6306 PAGE 119

DATE OF SECURITY DEED:        July 21, 2003

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED-FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

FORECLOSURE CLOSING DISCLOSURE: O.C.G.A. SECTION 7-1-1014(3) REQUIRES THAT WE INFORM YOU THAT IF YOU FAIL TO MEET ANY CONDITION OF TERM OF THE DOCUMENTS THAT YOU SIGN IN CONNECTION WITH OBTAINING A MORTGAGE LOAN YOU MAY LOSE THE PROPERTY THAT SERVES AS COLLATERAL FOR THE MORTGAGE LOAN THROUGH FORECLOSURE.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered                    _____ (SEAL)
in the presence of                              RICKY R. FRANKLIN - Grantor

_____                          _____ (SEAL)
Unofficial Witness                              - Grantor

_____                          _____ (SEAL)
Notary Public                                   - Grantor

                                                _____ (SEAL)
                                                - Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower, I reviewed with and explained to the Borrower the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower of Borrower's rights. After said review with and explanation to Borrower, Borrower executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower, it is my opinion that Borrower knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____                          _____
Notary Public                                   Closing Attorney

# EXHIBIT C



```
Doc ID:    016242670002 Type: ASGN
Recorded: 06/26/2013 at 03:47:32 PM
Fee Amt: $5.00 Page 1 of 2
Henry, GA Clerk of Superior Court
Barbara Harrison Clerk of Court
```
BK **13157** PG **96-97**

Prepared By:
CITIMORTGAGE, INC
SHEILA BROOKS
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON, MO 63368-2240

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE, CA 91209-9071

## ASSIGNMENT OF SECURITY DEED

MERS SIS # 888-679-6377 MIN: 100135813040030571

For value received, Mortgage Electronic Registration Systems, Inc. as nominee for Home Star Mortgage Services, LLC its successors and assigns, whose address is P.O. Box 2026 , Flint , MI, 48501-2026, (the "Assignor"), has this day transferred, sold, assigned, conveyed and set over to CitiMortgage, Inc., whose address is 1000 Technology Drive, O'Fallon, MO, 63368, as Assignee, its successors, representatives and assigns, all its right, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by Ricky R. Franklin to Mortgage Electronic Registration Systems, Inc. as nominee for Home Star Mortgage Services, LLC its successors and assigns, dated 07/21/2003, recorded in Book: 6306 Page: 99 Instrument No: 047491, Henry County, Georgia Records.

The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors, representatives and assigns, the aforesaid Security Deed and the property described therein.

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal on
6-14-13

Mortgage Electronic Registration Systems, Inc. as nominee for Home Star Mortgage Services, LLC its successors and assigns

By: Sandra West
Vice President



Signed, sealed and delivered in the presence of:

Geraldine A. Belinski

Renelle McAleer

Page # 1 38550731 24449 GA151 Henry County Internal

STATE OF **MISSOURI, ST. CHARLES COUNTY**

On **6-/4-13** _____ before me, the undersigned, a notary public in and for said state, personally appeared **Sandra West, Vice President** of **Mortgage Electronic Registration Systems, Inc. as nominee for Home Star Mortgage Services, LLC its successors and assigns** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

> SYBIL SHORT
> Notary Public - Notary Seal
> State of Missouri
> Commissioned for St. Louis County
> My Commission Expires: March 19, 2016
> Commission Number: 12316670

*Sybil Short*

Notary Public **Sybil Short**

Commission Expires: 03/19/2016

# EXHIBIT D

CitiMortgage 

August 27, 2014


RICKY R FRANKLIN
C/O RICKY R FRANKLIN
708 BRAMBLING WAY
STOCKBRIDGE        GA 30281-9040


Dear CitiMortgage Client:

Please accept this letter as confirmation of our receipt of your correspondence regarding your mortgage loan. Many of the items you have requested have already been provided to you either at loan origination or throughout the servicing of your mortgage. In an effort to assist you, we have enclosed the following additional items you have requested:

- Note
- Mortgage
- Application
- Assignment
- Payment History        (will be sent under separate cover)

The information below identifies your loan with the Owner and also provides your loan Owner's contact information.

    208809326
    CMI GNMA REPRCH HOLD PORT
    CORPORATE ACCOUNTING
    1000 TECHNOLOGY DRIVE
    O'FALLON        MO 63368-2240

CitiMortgage, Inc. is the Servicer of your mortgage. As Servicer, we have the authority to act on the Owner's behalf regarding the administration of your loan. We are responsible for collecting payments, answering questions about your account, and providing assistance if you have difficulty making your payments.

Please send all monthly payments and inquiries to CitiMortgage. Payments sent to the Owner listed above will not be credited to your loan.

To contact us visit our website at www.citimortgage.com or access our Automated Account Information Line, which is available 24 hours a day at 1-800-283-7918*. Representatives are available Monday through Friday from 8:00 a.m. to 10:00 p.m., ET, and Saturday from 8:00 a.m. to 6:00 p.m., ET. To access TTY services, dial 711 from the United States or dial 1-866-280-2050 from Puerto Rico. When you contact us, refer to your mortgage account, 2001160060.

 *Calls are randomly monitored and recorded for quality assurance. CitiMortgage is a debt collector and any information obtained will be used for that purpose.
©2013 CitiMortgage, Inc. CitiMortgage, Inc. is an equal housing lender.

# EXHIBIT E

