IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICKY R. FRANKLIN,

     Plaintiff,

  v.

CITIMORTGAGE, INC.,

     Defendant.

CIVIL ACTION FILE

NO. 1:15-CV-4396-LMM-WEJ

## **FINAL REPORT AND RECOMMENDATION**

On November 13, 2015, plaintiff, Ricky R. Franklin, initially filed this action [1-1] in the Superior Court of Henry County, Georgia, against defendant, CitiMortgage, Inc. ("CMI"), which removed [1] the matter to this Court. Plaintiff filed an Amended Complaint [5] alleging that he is the sole owner of real property located at 708 Brambling Way, Stockbridge Georgia, seeking to quiet title to that property pursuant to O.C.G.A § 23-3-60, and claiming that defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

After a period of discovery, the parties filed cross-motions for summary judgment, which are now pending before the Court. (See Def. CMI's Mot. Summ. J. [27]; Pl.'s Mot. Summ. J. [29].) For the reasons set forth below, the

undersigned **RECOMMENDS** that CMI's Motion be **GRANTED IN PART**, that Mr. Franklin's cross-motion be **DENIED**, and that plaintiff be permitted to proceed with his claim that defendant violated the TCPA by making calls to him using an artificial or prerecorded voice.

## I.   STATEMENT OF FACTS

Local Rule 56.1B(1) requires a movant for summary judgment to file a motion, brief, and statement of material facts for which there are no genuine issues to be tried.  N.D. Ga. R. 56.1(B)(1).  In addition to filing a responsive brief, the opposing party must respond to the movant's statement of facts and may submit a statement of additional facts which he contends are material.  Id. 56.1(B)(2).  If the respondent submits additional facts, then the movant must respond to them. Id. 56.1(B)(3).

The parties have complied with that Rule regarding their cross Motions. With its Motion for Summary Judgment, CMI filed a Statement of Undisputed Material Facts ("DSMF") [27-2], to which Mr. Franklin filed a Response ("R-DSMF") [32] and a Statement of Additional Facts ("PSAF") [32].[1]  Likewise,

_____

[1] Because defendant failed to respond to PSAF, the Court deems admitted those proposed additional facts that are supported by a citation and comport with

plaintiff filed a Statement of Undisputed Material Facts ("PSMF") [30] in support of his Motion for Summary Judgment, to which CMI filed a Response ("R-PSMF") [35].

The Court draws the material facts largely from the parties' submissions. Because the parties have filed cross Motions, where they propose similar undisputed facts, the Court uses the "see also" signal to avoid repetition. When a party denies a proposed fact, the Court reviews the record cited and determines whether that denial is supported, and if it is, whether any fact dispute is material. The Court sometimes modifies a proposed fact per another party's response if the latter better reflects the record cited, but views all facts in light of the standards for summary judgment set out infra Part II. The Court excludes proposed facts that are immaterial (PSMF ¶ 1, sentence 3) or stated as issues or legal conclusions (PSMF ¶¶ 9-10). The Court does not include facts contained in PSMF that are

---

Local Rule 56.1B(1). See N.D. Ga. R. 56.1(B) ("Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The court will not consider any fact: (a) not supported by a citation to evidence . . . ; (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts."). Accordingly, the Court excludes PSAF ¶ 3 because it is not supported by the record citation and excludes PSAF ¶ 4 because it is stated as a legal conclusion. (See PSAF ¶¶ 3-4.)

repetitive or similar to those addressed by the Court in reviewing DSMF and PSAF (PSMF ¶ 1, sentences 1-2, ¶¶ 2-3), or that are not supported by the record citation (PSMF ¶ 1, sentence 4, ¶¶ 4-5).  Finally, the Court includes some facts drawn from its own review of the record.  See Fed. R. Civ. P. 56(c)(3).

### A.    Note and Security Deed

On July 21, 2003, plaintiff entered into a $145,377 mortgage loan evidenced by a promissory note in favor of Homestar Mortgage Services, LLC ("Homestar"), and secured by 708 Brambling Way, Stockbridge, Georgia. (DSMF ¶ 1; R-DSMF ¶ 1.)  On that date, plaintiff also executed and conveyed a security deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Homestar and its successors and assigns.  (DSMF ¶ 2; R-DSMF ¶ 2.)  At some point, Homestar specially endorsed the note to CMI. (DSMF ¶ 5.)[2]

---

[2] Plaintiff disputes DSMF ¶ 5 because the endorsement is undated.  (R-DSMF ¶ 5.)  The Court overrules that objection because plaintiff fails to refute the proposed fact, which does not mention the date of endorsement.  See N.D. Ga. R. 56.1B(2)(a)(2)(i).

4

CMI began servicing the loan in 2003.  (DSMF ¶ 3[3]; see also Dauster-Adams Decl. [27-3] ¶ 6 & Ex. 3 (IRS Form 1098 addressed to plaintiff from CMI regarding mortgage interest he paid in 2003).)  Plaintiff was current on the loan and not in default at that time.  (DSMF ¶ 8.)[4]  At present, CMI possesses the original, endorsed note and owns the loan.  (Id. ¶¶ 6-7.)[5]  To date, plaintiff has not paid the loan in full.  (Id. ¶ 11.)[6]

_____

[3] Plaintiff objects to DSMF ¶ 3, citing a June 2013 "Assignment of Security Deed" from MERS to CMI and a computer screenshot listing CMI as servicer and the Government National Mortgage Association ("GNMA") as investor.  (R-DSMF ¶ 3.)  The Court overrules plaintiff's objection because he has not refuted the proposed fact.  See N.D. Ga. R. 56.1B(2)(a)(2)(i).  Neither the assignment nor the screenshot contradict CMI's evidence that it began servicing the loan in 2003.

[4] Plaintiff objects to DSMF ¶ 8, arguing that there is no documentation indicating when CMI began servicing the loan other than the June 26, 2013 assignment.  (R-DSMF ¶ 8.)  The Court overrules that objection because it fails to refute the proposed fact, which is supported by Ms. Dauster-Adams's declaration. (Dauster-Adams Decl. ¶ 10.)

[5] Plaintiff disputes DSMF ¶¶ 6 and 7 because the endorsement on the note is undated and cites a June 7, 2008 Department of Veterans Affairs Notice of Default to support his assertion that GNMA owns the note.  (See R-DSMF ¶¶ 6-7.)  The Court overrules those objections because plaintiff fails to refute the proposed fact and the note shows CMI as the current owner.  See N.D. Ga. R. 56.1B(2)(a)(2)(i).  Likewise, the Court excludes PSMF ¶ 5, which cites the Notice of Default for the same proposition, because that document does not support plaintiff's assertion that GNMA holds the note.  (See PSMF ¶ 5; R-PSMF ¶ 5.)

[6] Plaintiff objects to DSMF ¶ 11, arguing that defendant's Exhibit 1 (the note) may not be admitted into evidence without the original note.  (R-DSMF ¶

**B.     The Parties' Communications**

Mr. Franklin defaulted on the loan in 2013 for non-payment.  (DSMF ¶ 9; R-DSMF ¶ 9.)  CMI sent him a notice of default on May 3, 2013.  (DSMF ¶ 10; R-DSMF ¶ 10.)  On June 14, 2013, MERS in its capacity as nominee, assigned the security deed to CMI.  (DSMF ¶ 4; R-DSMF ¶ 4.)[7]  On August 27, 2014, CMI sent plaintiff a letter confirming its receipt of his correspondence regarding the loan and stating that items he had requested were enclosed.  (PSAF Ex. 8 [32], at 25.)  The letter identified "CMI GNMA REPRCH HOLD PORT" as the owner of the loan and CMI as the servicer with authority to act on behalf of the owner, and stated that CMI was responsible for collecting payments, and that plaintiff should send monthly payments to CMI and any payments sent to the owner would

---

11.)  The Court overrules that objection as argumentative and because it fails to refute the proposed fact, which is supported by Ms. Dauster-Adams's declaration. (See DSMF ¶ 11, citing Dauster-Adams Decl. ¶ 14 (declaring that plaintiff has not paid the loan in full based on her personal knowledge).)  See N.D. Ga. R. 56.1B(2)(a)(1), -(2)(i).

[7] Plaintiff admits DSMF ¶ 4 in part, but adds that MERS never held the note and thus could not assign it.  (See R-DSMF ¶ 4, second sentence.)  The Court excludes that statement as argumentative.  See N.D. Ga. R. 56.1B(2)(a)(1).

not be credited.  (PSAF ¶ 2, sentence 3, as modified by Ex. 8 [32], at 25; PSMF ¶ 6; R-PSMF ¶ 6.)[8]

On November 24, 2014, plaintiff sent CMI a request to validate the debt. (PSMF ¶ 7; R-PSMF ¶ 7.)  On December 4, 2014, CMI responded to plaintiff's request; the following statement was printed at the bottom of every page: "CitiMortgage is a debt collector and any information obtained will be used for that purpose."  (PSMF ¶ 8.)[9]

On May 15 and 21, 2015, CMI placed manually dialed calls to plaintiff's cellular telephone.  (DSMF ¶ 12, as modified by R-DSMF ¶ 12; DSMF ¶ 13.)[10] On those dates, CMI left automated voice messages on plaintiff's cellular telephone requesting that he return the calls.  (PSAF ¶ 5; see also Pl.'s Decl. Supp.

---

[8] The Court excludes the first sentence of PSAF ¶ 2 as unsupported by the record citation.  (Compare PSAF ¶ 2, with id. Ex. 8 [32], at 25.)  Sentence two and four are excluded as legal conclusions.  See N.D. Ga. R. 56.1B(1)(c).

[9] CMI does not dispute that it sent the December 4, 2014 letter, but objects to PSMF ¶ 8 on the basis that the letter alone does not prove it is debt collector under the FDCPA.  (R-PSMF ¶ 8.)  The Court overrules defendant's objection as argumentative.  See N.D. Ga. R. 56.1B(2)(a)(1).

[10] Plaintiff objects to DSMF ¶ 13, alleging that he received automated voicemail messages on his cellular telephone on May 15 and 21, 2015, and on other dates.  (R-DSMF ¶13.)  The Court overrules that objection because it fails to refute the proposed fact and plaintiff has no personal knowledge of how CMI placed the calls.  See N.D. Ga. R. 56.1B(2)(a)(2)(i).

7

[29-1] ¶ 5, at 67.)  On May 18, 2015, CMI placed plaintiff's account in a "cease and desist" status and stated that he would no longer receive verbal or written collection attempts.  (PSAF ¶ 1, portion supported by attached Ex. 7 [32], at 23.)[11]  On June 25, October 13 and 21, and November 2, 2015, plaintiff answered his cellular telephone, heard a pause, and an automated voice say, "Please stay on the line."  (PSAF ¶ 5; see also Pl.'s Decl. Supp. ¶ 5.)[12]

## C.    The Amended Complaint

The Amended Complaint alleges both state and federal claims.  The Amended Complaint seeks to quiet title to the property at issue pursuant to O.C.G.A § 23-3-60, alleging that assignment of the property to CMI was invalid and void.  (Am. Compl. ¶¶ 1, 10, 29-32.)  Additionally, in Counts I and II, plaintiff alleges that CMI violated the FDCPA and TCPA, respectively.  (Id. ¶¶ 33-46.)  Count I alleges that CMI is a debt collector as defined by the FDCPA and

---

[11] The Court only includes that portion of PSAF ¶ 1 supported by the record citation.  (See PSAF Ex. 7 [32], at 23.)  The statement that CMI continued to contact plaintiff is not supported by the citation and, therefore, is excluded.  (See id.)  Likewise, the Court excludes the statement that CMI's communications violated 15 U.S.C. § 1692c(c) as a legal conclusion.  See N.D. Ga. R. 56.1B(1)(c).

[12] CMI concedes that it placed manually dialed calls to plaintiff on May 15 and 21, June 25, October 13 and 21, and November 2, 2015.  (See R-PSMF ¶ 9; see also Dauster-Adams Decl. ¶¶ 16; Dauster-Adams Decl. Opp'n  [34-1] ¶¶ 4-7, 10-15.)

violated 15 U.S.C. §§ 1692c(c), 1692e(10), 1692f, and 1692g by continuing "to send harassing letters after receipt of Plaintiff's letter to cease and desist" and failing to validate the debt. (Am. Compl. ¶¶ 34-38.) Count II alleges that CMI willfully failed to comply with 47 U.S.C. § 227(b)(1)(A) by using an automatic telephone dialing system and/or prerecorded or artificial voice to make non-emergency calls to plaintiff's cellular telephone six times without his consent. (Am. Compl. ¶¶ 40-45.)

## II.   SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met

9

does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. Rice-Lamar, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried. Anderson, 477 U.S. at 251. The applicable substantive law will identify those facts that are material. Id. at 248. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not

preclude the entry of summary judgment.  Id.  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  For factual issues to be "genuine," they must have a real basis in the record.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial."  Id. at 587.

A cross-motion for summary judgment does not change the above standard. Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007).  Rather, "a court must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law."  Warshauer v. Chao, No. 4:06-CV-0103-HLM, 2008 WL 2622799, at *24 (May 7, 2008) (internal citations and quotations omitted).  "Both motions must be denied if there is a genuine issue of material fact.  But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2009).

## III.   <u>DISCUSSION</u>

In support of its motion and in opposition to plaintiff's cross-motion, CMI argues that plaintiff lacks standing to challenge the assignment, that it is not a debt collector as defined by the FDCPA, and that it manually dialed calls to plaintiff's cellular telephone.   (<u>See generally</u> Def.'s Mem. Supp. [27-1]; Def.'s Reply [38]; Def.'s Opp'n [34].)   Plaintiff repeats his arguments opposing CMI's motion in support of his cross-motion for summary judgment, arguing that he has standing to challenge the assignment as a "Land Grant/Patent owner to his land," and that CMI is a debt collector and has violated the FDCPA and TCPA.  (Pl.'s Opp'n [31]; Pl.'s Mem. Supp. [29-1]; Pl.'s Reply [39].)   The Court addresses each claim made in the Amended Complaint below.

### A.   Claim to Quiet Title Pursuant to O.C.G.A. § 23-3-60

CMI argues that plaintiff's quiet title claim fails as a matter of law because he was not a party to the assignment, lacks standing to challenge its validity, and lacks title to the property as a result of the security deed.  (Def.'s Mem. Supp. 6-11; Def.'s Opp'n 9-11.)  CMI contends that plaintiff's loan is not securitized and, regardless, that would not impact its rights.  (Def.'s Mem. Supp. 7.)  Additionally, regarding plaintiff's land grant argument, defendant observes that it is implausible

12

that a nearly 200-year-old document gives plaintiff superior title to a property he admittedly purchased in 2003.  (Def.'s Opp'n 9.)

Plaintiff argues that he filed an unrecorded deed from 1821 conveyed from Georgia Land Lotteries which grants and assigns superior legal and prescriptive title in the property to him.  (Pl.'s Opp'n 4-7; Pl.'s Mem. Supp. 7, 9-10; Pl.'s Reply 3-8.)  Mr. Franklin contends that the assignment is a cloud upon his title which he seeks to clear by complying with O.C.G.A. § 23-2-62(b).[13]  (Pl.'s Opp'n 4-5; Pl.'s Mem. Supp. 7-8; Pl.'s Reply 4-5.)  Finally, plaintiff argues that MERS never held the note and thus could not assign the security deed.  (Pl.'s Opp'n 7-8; Pl.'s Mem. Supp. 8-9; Pl.'s Reply 5-6.)[14]

Georgia's Quiet Title Act of 1966 provides a mechanism for "removing any cloud upon the title to land" and "conclusively establishing that certain

---

[13] In Georgia, a proceeding in rem to quiet title requires the petitioner to file a particular description of the land at issue, a specification of his interest in the land, a statement as to the basis of that interest, a description of all adverse claims, the names and addresses of any possible adverse claimant, and a statement as to the grounds upon which the petitioner seeks to remove the cloud. O.C.G.A. § 23-3-62(b).

[14] Plaintiff argues that CMI's copy of the note must be excluded because it lacks authentication.  (Pl.'s Opp'n 8-9.)  The Court **DENIES** that request because CMI has authenticated a copy of the original note through Ms. Dauster-Adams's declaration.  (See Decl. Dauster-Adams ¶¶ 2, 4, 9 & Ex. 1.)

13

named persons are the owners of all the interests in land." O.C.G.A. § 23-3-60. In such an action, "a plaintiff must assert that he holds some current record title or current prescriptive title, in order to maintain his suit." Smith v. Ga. Kaolin Co., 498 S.E.2d 266, 267-68 (Ga. 1998).

Mr. Franklin's quiet title claim fails as a matter of law. No reasonable jury could find that he owns the property at issue free and clear. Any right plaintiff has to legal title in the property is subordinate to CMI's rights under the security deed. Upon its execution, Mr. Franklin granted to Homestar, MERS, and their successors and assigns, legal title to the property until the debt securing it is paid in full. There is no genuine issue regarding the validity of the security deed, and plaintiff cannot challenge the validity of the assignment because he was not a party to it. See Montgomery v. Bank of Am., 740 S.E.2d 434, 438 (Ga. App. 2013) (finding that mortgagor had no standing to challenge assignment of security deed because mortgagor was not party to that assignment). Likewise, plaintiff's argument that the note and security deed were split, thereby invalidating the assignment, is unavailing and has been rejected repeatedly. See e.g., Metellus v. Bank of Am. N.A., 1:12-CV-1947-CC-GGB, 2012 WL 7763041, at *5 (N.D. Ga. Nov. 2, 2012) (collecting cases); see also Morgan v. Ocwen Loan Servicing, LLC, 795 F. Supp. 2d 1370, 1375 (N.D. Ga. 2011) (under Georgia law, "[s]eparation of

14

the note and security deed creates a question of what entity would have the authority to foreclose, but does not render either instrument void"). Similarly, whether the loan is securitized or not has no effect on the above obligations. See Edwards v. Bank of Am., N.A., No. 1:11-cv-2465-RWS, 2012 WL 43207073, at *6 (N.D. Ga. Aug. 2, 2012). Finally, it is undisputed that plaintiff defaulted on the loan and the debt has not been paid.

Thus, the undersigned **REPORTS** that plaintiff's request to quiet title in the property pursuant to O.C.G.A. § 23-3-60 fails as a matter of law and summary judgment must be granted in favor of CMI on that claim.

### B.   Count I:  FDCPA Claim

CMI argues that Count I must fail because it is not a debt collector as defined by the FDCPA. In support of its argument, CMI observes that it was attempting to collect its own debt, the loan was not in default in 2003 when it became the servicer, and it holds both the note and the security deed. (Def.'s Mem. Supp. 11-14; Def.'s Opp'n 12-17.)

Mr. Franklin argues that CMI did not extend credit to him and, regardless, is a debt collector because it violated the FDCPA's false name exception, 15 U.S.C. § 1692a(6), by using a name other than its own—CMI GNMA REPROCH HOLD PORT—in an August 27, 2014 letter. (Pl.'s Opp'n 9-10; Pl.'s Mem. Supp.

15

11-12; Pl.'s Reply 8-9.)   In response to that allegation, CMI contends that plaintiff fails to identify what false name it allegedly used and contends that the admissible evidence in the record demonstrates that it only acted in its own name. (Def.'s Reply 12; Def.'s Opp'n 17.)

To prevail on an FDCPA claim, a plaintiff must prove that (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.  See Reese v. Ellis, Painter, Ratterre & Adams, LLC, 678 F.3d 1211, 1216 (11th Cir. 2012).  The second element is at issue here.

The FDCPA defines "debt collector" as:

. . . any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . [T]he term also includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.  For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).  Excluded from that definition is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another

16

to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person . . . ."  15 U.S.C. § 1692a(6)(F)(iii); see also Fenello v. Bank of Am., NA, 577 F. App'x 899, 902 (11th Cir. 2014) (per curiam) (affirming district court's conclusion that servicer was not a "debt collector" under the FDCPA because its activities involved a debt that was not in default at the time it became the servicer).

Additionally, the Eleventh Circuit has clarified that a non-originating debt-holder bank that attempts to collect a debt in default at the time it was acquired is not a "debt collector" for purposes of the FDCPA, unless it regularly collects on debts owed to another, or its principal business purpose is the collection of debts. Davidson v. Capital One Bank (USA) N.A., No. 14-14220, 2015 WL 4994733, at *6 (11th Cir. Aug. 21, 2015); accord Reese, 678 F.3d at 1218 (a complaint must contain "enough factual content to allow a reasonable inference that the [defendant] is a 'debt collector' because it regularly attempts to collect debts"). Finally, "an entity cannot transform itself into a 'debt collector' within the meaning of the FDCPA simply by noting in a letter that it may be considered one under the Act."   Fenello v. Bank of Am., NA, 577 F. App'x 899, 902 (11th Cir. 2014) (per curiam).

Mr. Franklin's FDCPA claim fails as a matter of law.  The undisputed evidence shows that CMI began servicing the debt in 2003 before he defaulted in 2013.  Moreover, after Davidson, it is irrelevant whether CMI's acquisition of the debt occurred before or after plaintiff defaulted because the Amended Complaint fails to plead sufficient facts from which it is plausible to infer that CMI regularly acquires debts owed to others, or that the principal purpose of its business is debt collection.  See Barber v. Rubin Lublin, LLC, No. 1:13-CV-975-TWT, 2013 WL 6795158, at *9 (N.D. Ga. Dec. 20, 2013) (noting that conclusory allegations that a defendant is a debt collector are insufficient to adequately plead a claim under the FDCPA).

Furthermore, no reasonable trier of fact could find that CMI used a false name to collect the loan via its August 27, 2014 response to Mr. Franklin.  The false name exception is triggered if the least sophisticated consumer would have the false impression that a third party was collecting the debt.  See Dynott v. Nationstar Mortg., LLC, No. 1:13-CV-1474-WSD, 2014 WL 1028886, at *3 (N.D. Ga. Mar. 17, 2014) (applying "least sophisticated consumer" standard to FDCPA claim regarding allegedly confusing and deceptive letters).  In the letter, CMI states that it is responding to plaintiff's request for information and clearly identifies itself as the servicer authorized to accept plaintiff's loan payments.  The

18

statement that "CMI GNMA REPRCH HOLD PORT" owned the loan and that CMI was acting on its behalf does not subject it to liability under the FDCPA's false name exception.  Even assuming the correspondence was a dunning letter, neither sophistication nor guesswork would be required to determine that CMI was the entity attempting to collect a debt.  The Court can presume that Mr. Franklin "possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1194 (11th Cir. 2010) (per curiam).  CMI cannot be held liable for any "bizarre or idiosyncratic interpretations" of that letter.  See id.

Thus, the undersigned **REPORTS** that plaintiff's FDCPA claim fails as a matter of law because the undisputed facts show that CMI is not a debt collector as defined by that statute and no reasonable trier of fact could find that it used a false name in the process of collecting the debt.  Accordingly, summary judgment must be granted in favor of CMI on Count I.

### C.    Count II:  TCPA Claim

CMI argues that it did not violate the TCPA because the only calls it placed to Mr. Franklin's cellular telephone were manually dialed.  (Def.'s Mem. Supp. 16-17; Def.'s Opp'n 18-19.)   Defendant contends that plaintiff has failed to proffer admissible evidence sufficient to create a material fact regarding how it called him.  (Def.'s Reply 13-15; Def.'s Opp'n 18-19.)

Plaintiff argues that, although CMI did not have consent to contact him on his cellular telephone, it left automated voice messages for him on May 15 and 21, 2015.  (Pl.'s Opp'n 11; Pl.'s Mem. Supp. 12; Pl.'s Reply 10.)  Additionally, Mr. Franklin answered his cellular telephone on May 28, October 13 and 21, and November 2, 2015, and heard a pause followed by an automated message stating, "Please stay on the line."  (Pl.'s Opp'n 11; Pl.'s Mem. Supp. 12; Pl.'s Reply 10.)  Plaintiff contends that "he has been called at least 14 times in violation of the [TCPA]."  (Pl.'s Opp'n 11; see also Pl.'s Mem. Supp. 13; Pl.'s Reply 10.)

Congress authorized a private right of action to enforce the TCPA.  See 47 U.S.C. § 227(b)(3).  Pursuant to § 227(b)(1)(A), it is unlawful

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--

(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

See 47 U.S.C. § 227(b)(1)(A)(i)-(iii).

The Amended Complaint alleges that CMI violated the TCPA by using both an automatic dialing system and/or a prerecorded voice to contact plaintiff's cellular telephone.  (Am. Compl. ¶¶ 23-28, 40-41.)  Mr. Franklin's claim that defendant used an automatic telephone dialing system must fail, as the undisputed evidence establishes that CMI manually dialed those calls.  Mr. Franklin has no personal knowledge of how CMI placed the calls at issue and simply cannot testify in that regard, leaving the only admissible evidence from Ms. Dauster-Adams, who states that all calls were manually dialed.  (See Dauster-Adams Decl. ¶¶ 16; Dauster-Adams Decl. Opp'n ¶¶ 4-7, 10-15.)

CMI has not moved for summary judgment regarding plaintiff's claims that it made calls to him using an artificial or prerecorded voice.  Plaintiff's

21

declaration asserts that CMI contacted his cellular telephone six times with automated messages.  (See Pl.'s Decl. Supp. ¶ 5, at 67.)  CMI concedes that it called plaintiff, but does not admit or deny using an artificial or prerecorded voice. (See Dauster-Adams Decl. Opp'n ¶¶ 4-7, 10-15.)  However, the undersigned may not recommend entry of summary judgment to plaintiff on that portion of his TCPA claim because he has not established that those calls were not "made solely to collect a debt owed to or guaranteed by the United States," an exception permitted under § 227(b)(1)(A)(iii).[15]

Thus, the undersigned **REPORTS** that the portion of plaintiff's TCPA claim alleging the use of an automatic telephone dialing system fails as a matter of law because the undisputed facts show that CMI manually dialed all calls to him.  However, it is not clear whether plaintiff may prevail on his TCPA claim regarding CMI's alleged use of an artificial or prerecorded voice to make those calls.  Accordingly, both parties' motions for summary judgment must be denied on that portion of Count II.

_____

[15] Plaintiff repeatedly asserts that GNMA actually holds the debt and that CMI was collecting it on behalf of GNMA.  (Pl.'s Mem. Supp. 4, 11 & Ex. D [29-1], at 22; Pl.'s Reply 2, 8; Pl.'s Opp'n 2, 9.)  If plaintiff establishes his version of events, then CMI could not have violated the TCPA.

22

IV.   **CONCLUSION**

For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's Motion for Summary Judgment [27] be **GRANTED IN PART** and judgment be entered in favor of CMI as to plaintiff's quiet title claim and FDCPA claim (Count I), and as to the portion of his TCPA claim (Count II) alleging CMI contacted him using an automatic telephone dialing system.   Additionally, the undersigned **RECOMMENDS** that plaintiff's cross-motion [29] be **DENIED**, and that he be permitted to proceed to trial on the portion of his TCPA claim (Count II) alleging CMI contacted him using an artificial or prerecorded voice.

The Clerk is **DIRECTED** to terminate the referral to the undersigned Magistrate Judge.

**SO RECOMMENDED**, this 8th day of September, 2016.


_Walter E. Johnson_
_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

23